SARAH E. PHILLIPS, Respondent, *v.* THE NEW YORK
CENTRAL AND HUDSON RIVER RAILROAD COMPANY,
Appellant.

*Supreme Court, Third Department, General Term, July 6, 1889.*

1. *Trial. Charge.*—In an action against a railroad company for personal
injuries, a refusal to charge "that if the proximate cause of the injury
to the plaintiff was the breaking of a defective rein, the plaintiff is not
entitled to recover," is not error, where the breaking of the rein is not
the proximate cause of the injury.
2. *Same. Refusal to charge.*—A refusal to give requested instructions
cannot be assigned as error, when the judge afterwards recalls the jury
and gives them the refused instructions in the presence of the party
who requested them, and without objection from him.
3. *Same. Correction of charge.*—A judge can correct his charge at the
trial, provided he does it so as not to prejudice the rights of the inter-
ested parties.
4. *Negligence. Gate.*—The fact that a gate at the railroad crossing, on
being let down, struck plaintiff's horse and caused it to run, shows
negligence on the part of the company.
5. *Same. Contributory.*—A mere passenger, who in no manner interferes
with the management of the horse, is free from contributory negli-
gence.

Appeal by the defendant from a judgment herein rendered
in favor of the plaintiff against the defendant. Also an order
denying a new trial.

*S. W. Jackson,* for appellant.

*D. M. Chadsey,* for respondent.

INGALLS, J.—On the 19th day of April, 1886, the plaintiff accompanied her father to Schenectady upon business. They went in a single market wagon drawn by one horse, and while traveling at a moderate gait upon one of the public streets of Schenectady, approached the railroad crossing of the defendant, at which was erected gates so constructed that they could be raised and dropped for the purpose of preventing travelers upon the highway from crossing when cars were approaching. The horse and wagon by which the plaintiff was conveyed to Schenectady belonged to her father, Sebastian Phillips, who drove the horse, and by whose invitation the plaintiff went to Schenectady. The evidence justified the jury in concluding that the gates were up, and that no warning or signal was given that a train of cars was approaching, until the horse which drew the wagon in which the plaintiff was seated had passed under or beyond the west gate, when the gates began to descend, and the horse became frightened, and, as he reached and was passing the east gate, some portion of it struck the horse, and he became so frightened as to be unmanageable, and in the effort of the driver to restrain him, one of the reins broke and the horse ran, and the wagon was turned over, and the plaintiff was thrown to the ground and seriously injured.

The evidence is to the effect that the horse was a kind, tractable animal, and so far as the evidence indicates, was properly managed by the plaintiff's father. The father of plaintiff testified that as they approached the crossing, he looked and saw that the gates were up, which intimated that it was safe and proper to drive over the crossing. The evidence is conflicting as to whether the horse was hit by the gate, and also in regard to other circumstances which attended the casualty. The jury have settled such conflict by their verdict. The jury were required by the court to render a general verdict, and also to find specially upon the following questions :

SUPREME COURT.

PHILLIPS
*vs.*
N. Y. C. AND H. R. R. Co.

Questions of fact submitted by the court to the jury, with its verdict and answers thereto appended :

*First.* Did the east gate come in collision with the horse's head as he passed under it, answer yes or no ? Yes.

*Second.* Was the east gate going up or coming down, or stationary, at the time the horse passed it ? Coming down.

*Third.* Was the horse frightened so as to become unmanageable before he reached the east gate ? No.

*Fourth.* At the time the gate was lowered, was there an engine on the track, approaching the crossing from the south ? Yes.

*Fifth.* At the time the gate was lowered, was it necessary for the protection of persons or teams from the danger of the approaching engine ? No.

*Sixth.* Did the lowering of the gates commence before or after the horse reached the railroad track from the west? After.

*Finally.* Jury will render a general verdict for plaintiff or for defendant, and if for plaintiff state the sum of damages found. The jury rendered a verdict for plaintiff for $5,000. We are convinced that such findings by the jury are sufficiently sustained by the evidence and that they are justified by the facts and circumstances, in their conclusion that the injury to the plaintiff was occasioned by the negligence of the defendant, based upon the careless and improper manner its employee managed the gates upon the occasion in question.

Such gates when properly and judiciously managed are obviously well calculated to afford the traveling public great protection, when approaching railroad crossings. But

if negligently manipulated, it can be readily perceived, that so far from giving the needed notice of the approach of a train of cars, the lowering of the gates at the moment a team enters upon the crossing, would be likely to increase, rather than diminish, the danger, as the device, under such management, would bo likely to become a trap, as it seems to have been upon the occasion in question. The jury were also justified in their determination that the plaintiff was free from any contributory negligence. She was a mere passenger, and in no manner interfered with the management of the horse. Robinson *v.* The N. Y. C. and H. R. R. R. Co., 66 N. Y. 11; Dyer *v.* The Erie R. W. Co., 71 Id. 228.

The evidence sustains the finding by the jury that the driver of the horse exercised the requisite care, prudence and skill in the management of the horse in approaching the crossing, and also at the time the gates were lowered, and after the horse became frightened, and that no negligent act, or omission of duty, on his part, under the circumstances, produced or even contributed to the injury. The defendant's counsel requested the court to charge, "that it was the duty of the defendant to give notice of the approach of its engines to travelers upon the public streets approaching its tracks." The court, when requested, declined so to charge, but did subsequently so charge the jury, and we think, under circumstances which gave to the defendant the entire benefit of the proposition embraced in such request. The defendant further requested the court to charge the jury: "That if the plaintiff should be held to be entitled to recover in this action, the jury must not allow her any damages, for or on account of any inability to labor, either in the past or present, although such inability may be caused by the injury she received by the accident in question." The court in the first instance, declined so to charge, but afterwards charged the jury as requested without qualification. The counsel for the defendant upon

the argument of this appeal conceded that he was present in court, when the jury returned into court, and received the corrected instruction from the court, upon the foregoing requests to charge.

It does not appear that any objection was made by the defendant's counsel to the instruction given to the jury after their return, or that an exception was interposed to such proceedings. We are not to infer but that the jury gave full force and effect to such instruction, and that the defendant had the full benefit thereof. It can hardly be doubted but that a judge has the authority to correct his charge at the trial, provided he does so at such time and in such manner as not to prejudice the rights of the parties interested. We are unable to perceive wherein the defendant's case has been prejudiced by the course pursued by the judge at the trial in that particular.

The court was further requested by the defendant's counsel to charge " that if the proximate cause of the injury to the plaintiff was the breaking of a defective rein, the plaintiff is not entitled to recover.

We are satisfied that the court committed no error in refusing so to charge, as the evidence did not justify such a charge, nor would it have justified the jury in finding that the breaking of the rein was the proximate cause of the injury to the plaintiff. The evidence was to the effect that the harness was in good condition; that the rein which broke had been purchased by the plaintiff's father within two years previous to the accident, and was not cracked, and that the break was fresh. The only indication of weakness relied upon by the defendant was that it broke, and the evidence furnishes a pretty satisfactory reason for such breaking, as the strength of the driver, and of the horse, was brought to bear upon it, thereby subjecting it to an extraordinary strain. The facts show that the breaking of the rein was caused by the ineffectual effort of the driver to restrain the horse, which had become frenzied in

consequence of the negligent manner the gates were lowered by the servant of the defendant, and not in consequence of any defect in such rein, or owing to any negligence of the plaintiff or her father.

We are satisfied that the cause was correctly decided at the circuit, and that the judgment should be affirmed and a new trial denied, with costs.

LEARNED, P. J., and LANDON, J., concur.